UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

PARK B.SMITH, INC.,                    :

              Plaintiff,  :
                         06 Civ. 869 (LMM)

          -v-                     :

CHF INDUSTRIES INC.,                   :    <u>MEMORANDUM AND ORDER</u>

             Defendant.  :

- - - - - - - - - - - - - - - X

McKENNA, D.J.

    Plaintiff Park B. Smith, Inc. ("PBS Inc.") brought this action, alleging infringement by Defendant CHF Industries, Inc. ("CHF") of two design patents, U.S. Patent Nos. Des. 493,651 (the "'651 patent") and Des. 505,039 (the "'039" patent").  On March 6, 2008, this Court granted CHF's motion for summary judgment of noninfringement of the '651 and '039 patents.  On February 6, 2009, the Federal Circuit vacated that judgment and remanded the case in light of <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 543 F.3d 665 (Fed. Cir. 2008).

    There are several motions currently pending before this Court.  PBS Inc. moves to substitute Park B. Smith, Ltd. ("PBS Ltd.") as plaintiff; CHF moves to dismiss PBS Inc.'s complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for lack of standing; CHF moves

for summary judgment of noninfringement or, in the alternative, of invalidity of the '651 and '039 patents; and PBS Inc. moves for leave to file an amended complaint.

For the reasons stated and as set forth below, PBS Inc.'s motion to substitute is GRANTED; CHF's motion to dismiss is DENIED; CHF's motion for summary judgment is DENIED; and PBS Inc.'s motion for leave to file an amended complaint is DENIED.

**BACKGROUND**

### A. Factual Background

PBS Inc. is a family-run business, incorporated and based in New York, New York, that designs and sells textile products, including window treatments, used to decorate residential interiors. (<u>See</u> Decl. of Linda Johnson Smith, June 30, 2006, ("June 2006 Smith Decl.") ¶¶ 5-8.) Park B. Smith is the Chairman of PBS Inc. and his wife, Linda Johnson Smith, is PBS Inc.'s President. (Decl. of Park. B. Smith, June 3, 2010, ("June 2010 Smith Decl.") ¶ 1.) Park B. Smith and Linda Johnson Smith are also Chairman and President, respectively, of PBS Ltd., a limited partnership organized under the laws of New Jersey and based in New York, New York. (<u>Id.</u> ¶ 2; Pl.'s Proposed Am. Compl. ¶ 5.)

Park B. Smith and Linda Johnson Smith are listed as the inventors on the face of both the '651 and '039 patents

and PBS Inc. is listed as the assignee. (See Def.'s Sum. J. Mem. Ex. 2 ("'651 patent") and Ex. 3 ("'039 patent").)

The '651 patent includes a single claim, for "[t]he ornamental design for a window shade" as shown in ten drawings, and describes "a raisable panel without specified ornamentation; a back also without specified ornamentation; folds that stack and cascade slightly upwards at the bottom of the shade when the shade is raised; and a continuous rod pocket or sleeve formed at the top of the shade for suspending the shade from a rod or pole." Park B. Smith, Inc. v. CHF Indus., Inc., 2008 WL 650339, at *3; see '651 Patent. The effective filing date of the '651 patent is November 21, 2003. (See '651 Patent.)

The '039 patent also includes a single claim, for "[t]he ornamental design for a raisable panel" as shown in ten drawings, and similarly describes "a raisable panel without specified ornamentation; a back also without specified ornamentation; and folds that stack and cascade slightly upwards at the bottom of the shade when the shade is raised." Park B. Smith, 2008 WL 650339, at *3 (S.D.N.Y. Mar. 6, 2008); see '039 Patent. The effective filing date of the '039 patent is November 21, 2003. (See '039 Patent.)

CHF is a corporation, with its principal place of business in New York, New York, that makes and distributes

home textile products, including window treatments. (Def.'s Ans. & Countercls. ¶ 5.)  Of relevance here, CHF offers a product identified as the Empire Silk Pole-Top Roman Shade (the "Pole-Top Roman Shade") for sale in the United States.  (Id. ¶ 13.)

### B. Procedural Background

On February 3, 2006, PBS Inc. brought this action against CHF, alleging that CHF's Pole-Top Roman Shade design infringed the '651 and '039 patents, which were allegedly owned by PBS Inc. through assignment.  (See Pl.'s Compl. ¶¶ 15-20.)  On March 24, 2006, CHF answered PBS Inc.'s complaint, asserted various affirmative defenses, and asserted counterclaims seeking declaratory judgment of noninfringement and invalidity of the '651 and '039 patents.  (See Def.'s Ans. & Countercls..)

On March 6, 2008, this Court granted CHF's motion for summary judgment of noninfringement of the '651 and '039 patents.  Park B. Smith, 2008 WL 650339, at *5. Specifically, to determine whether CHF's product infringed the patents-at-issue, this Court applied two tests, both of which had to be satisfied: (1) the "substantial similarity" or "ordinary observer" test, and (2) the "point of novelty" test.  Id. at *4.  This Court held that the overall similarity of CHF's product and PBS Inc.'s claimed designs

demonstrated that there was an issue of material fact precluding summary judgment on the basis of the ordinary observer test.  Id.  The Court held, however, that PBS Inc. failed to present legally cognizable points of novelty for the '651 and '039 patent designs, and thus, summary judgment of noninfringement was appropriate on the basis of PBS Inc.'s failure to satisfy the point of novelty test.[1] Id.

The Federal Circuit eliminated the point of novelty test in Egyptian Goddess, 543 F.3d 665, and thus, on February 6, 2009, the Federal Circuit vacated this Court's grant of summary judgment and remanded the case to this Court.

On April 16, 2009, CHF again moved for summary judgment of noninfringement, or in the alternative, of invalidity of the '651 and '039 patents.  CHF argues that it is entitled to summary judgment under the ordinary observer test as set forth in Egyptian Goddess, or, in the alternative, that the '651 and '039 patents are invalid as anticipated by prior art.  (See Def.'s Mem. in Supp. of Its Mot. for Summ. J. ("Def.'s Summ. J. Mem.") at 1-3.)

---

[1] The Court also denied CHF's motion for summary judgment of invalidity for indefiniteness of the '651 patent and denied PBS Inc.'s cross-motion for partial summary judgment of infringement.  Park B. Smith, 2008 WL 650339 at *6-7.

On March 26, 2010, the same day that the parties completed briefing on CHF's summary judgment motion, PBS Inc. moved to amend its complaint to: (1) add PBS Ltd. as a co-plaintiff; (2) add Wal-Mart Stores, Inc. ("Walmart"), a customer of CHF, as a defendant; (3) add a claim for patent infringement of U.S. Patent No. Des. 499,596 ("'596 patent"); and (4) add a claim for unfair competition based on CHF's and Walmart's sales of the Pole-Top Roman Shade. (See Pl.'s Proposed Am. Compl. ¶¶ 5, 7, 11, 21-37.)

At some point soon after PBS Inc. filed its motion to amend, it was discovered that PBS Ltd., not PBS Inc., is the assignee and owner of the '651 and '039 patents. (See Def.'s Mem. in Supp. of Its Mot. to Dismiss ("Def.'s Mot. to Dismiss Mem.") at 5; Pl.'s Mem. in Supp. of Its Rule 17(a) Mot. to Substitute ("Pl.'s Rule 17(a) Mem.") at 2-3.) PBS Inc. is listed as the assignee on the face of the '651 and '039 patents, but all of the underlying assignment documents on file with the USPTO designate PBS Ltd. as the assignee. (See Def.'s Mot. to Dismiss Mem. at 5; Pl.'s Rule 17(a) Mem. at 2-3.) PBS Inc. asserts that the designation of PBS Inc., instead of PBS Ltd., as assignee on the face of the '651 and '039 patents was the result of a clerical error. (See Decl. of Thomas J. Parker, June 3, 2010, ("Parker Decl.") ¶ 4.)

On June 3, 2010, CHF moved to dismiss PBS Inc.'s complaint with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. CHF argues that PBS Inc. lacked constitutional standing when it filed suit, and thus, the suit must be dismissed. (See Def.'s Mot. to Dismiss Mem. at 1.)

On June 4, 2010, PBS Inc. moved, pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, to ratify or substitute PBS Ltd. as Plaintiff. PBS Inc. argues that the Court should allow ratification or substitution here because the wrong party was named as the result of mistake, not bad faith, and CHF will suffer no prejudice. (See Pl.'s Rule 17(a) Mem. at 1-2.)

**DISCUSSION**

**A. PBS Inc.'s Motion to Substitute**

PBS Inc. concedes that it lacks statutory standing to sue in its own name because it is not the owner or assignee of the '651 or '039 patent, and thus, PBS Inc. moves to ratify or substitute PBS Ltd. as the plaintiff pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure. (See Pl.'s Rule 17(a) Mem. at 1-2.) In response, CHF argues that because PBS Inc. lacked statutory and constitutional standing at the time it filed suit in 2006, PBS Inc. cannot cure this standing defect by substituting

PBS Ltd., the party with constitutional standing, as plaintiff and therefore the suit must be dismissed because this Court is without jurisdiction,.  (See Def.'s Mem. in Opp'n to Pl.'s Rule 17(a) Mot. ("Def.'s Rule 17(a) Opp'n Mem.") at 1-2.)  PBS Inc., in turn, argues that it did have constitutional standing, as an exclusive licensee, at the time it filed suit and even if it did not, this Court has discretion to allow substitution under Rule 17(a) to cure such a jurisdictional defect.  (See Pl.'s Rule 17(a) Reply Mem. at 1-3.)

**1.**

The Court will first consider whether PBS Inc. had constitutional standing at the time it filed suit.  The Federal Circuit has made clear that a patent licensee does not have constitutional standing to sue in its own name or even participate in a suit unless it holds "exclusionary rights and interests created by the patent statutes." Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007).  As the Federal Circuit has explained, "plaintiffs in patent suits fall into three categories for standing purposes: 'those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit.'"  Aspex Eyewear, Inc. v. Altair

Eyewear, Inc., 288 Fed. App'x 697, 704 (Fed Cir. 2008)(quoting Morrow, 499 F.3d at 1339). The third category of plaintiffs lack both statutory and constitutional standing and includes "those licensees who are authorized to make, use, and sell the patented product but who have no right to prevent others from also doing so." Aspex Eyewear, 288 Fed. App'x at 705 (citing Morrow, 499 F.3d at 1341). This is so because where a plaintiff lacks exclusionary rights under the patent statutes, that plaintiff is "not injured by a party that makes, uses, or sells the patented invention because [the plaintiff] do[es] not hold the necessary exclusionary rights." Morrow, 499 F.3d at 1340-41. "[T]he person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1033 (Fed. Cir. 1995)(quoting Whitmore v. Arkansas, 495 U.S. 149, 154 (1990)).

Here, PBS Inc. has failed to demonstrate that it held any exclusionary rights in the '651 or '039 patent. PBS Inc. belatedly asserts that it "was and has been the exclusive licensee under the '651 and '039 patents."[2] (See Second Supplemental Decl. of Park B. Smith, Aug. 10, 2010,

---

[2] PBS Inc. did not describe itself as an "exclusive licensee" until after the parties had completed briefing on PBS Inc.'s Rule 17(a) motion and CHF's motion to dismiss. (See August 2010 Smith Decl. at ¶ 3.)

("August 2010 Smith Decl.") ¶ 3.)   PBS Inc.'s conclusory statement absent any explanation or supporting facts, however, is insufficient to confer Article III standing. Further, PBS Inc.'s assertion is unconvincing in light of PBS Inc.'s previous description of itself as PBS Ltd.'s "exclusive sales representative" (see Supplemental Decl. of Park B. Smith, July 22, 2010, ("July 2010 Smith Decl.") ¶ 3)) and PBS Inc.'s contradictory assertion in its proposed amended complaint that PBS Ltd., not PBS Inc., was the "exclusive licensee."   (See Pl.'s Proposed Am. Compl. ¶ 13.)  Even if PBS Inc. has suffered some economic loss as a result of CHF's alleged infringement, this is not enough to establish constitutional standing.   See Ortho Pharm., 52 F.3d at 1031 (explaining that economic injury alone does not confer constitutional standing and "a licensee must hold some of the proprietary sticks from the bundle of patent rights"(citing Weinar v. Rollform, Inc., 744 F.2d 797, 803 (Fed. Cir. 1984))).

Thus, PBS Inc. did not have constitutional standing at the time it filed suit.

## 2.

The next question is whether PBS Inc. can cure the constitutional standing defect by substituting PBS Ltd., the owner by assignment of the '651 and '039 patents, as

plaintiff pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure.

CHF is correct that a plaintiff in a patent infringement suit may not cure a jurisdictional defect in standing by adding a party with standing or through retroactive assignment of the patents-in-suit. (<u>See</u> Def.'s Mot. to Dismiss Mem. at 8 (quoting <u>Schreiber Foods v. Beatrice Cheese, Inc.</u>, 402 F.3d 1198, 1203 (Fed. Cir. 2005)).) It does not follow, however, that a standing defect may not be cured through substitution of the plaintiff under Rule 17(a)(3) and CHF has pointed to no case that would support such a proposition.

To the contrary, courts in the Second Circuit have generally allowed for substitution when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action.[3] <u>See</u> <u>Adv. Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 20 (2d Cir. 1997)(holding that where the plaintiff-corporation lacked standing to pursue its

---

[3] At least one circuit has taken the approach CHF proposes. <u>See</u> <u>Zurich Ins. Co. v. Logitrans, Inc.</u>, 297 F.3d 528 (6th Cir. 2002)(holding that where it was discovered just before trial that it was plaintiff's sister company, not the plaintiff, that had incurred the injury and thus, plaintiff lacked Article III standing, the district court was without jurisdiction to consider a Rule 17(a) motion to substitute). As one commentator aptly notes in discussing such a rigid approach, "a focus on standing may lead a court to refuse application of the ameliorating rules that enables substitution of the real party in interest when the wrong plaintiff filed the action." 13A Charles Alan Wright <u>et. al.,</u> Federal Practice and Procedure § 3531 (3d ed. 2011).

shareholders' claims, the district court erred in refusing to allow substitution of shareholders as plaintiffs under Rule 17(a)(3)); Hackner v. Guar. Trust Co. of New York, 117 F.2d 95, 98-99 (2d Cir. 1941)(allowing substitution of a new plaintiff for the original plaintiffs who lacked claims within the requisite jurisdictional amount); Nat'l Maritime Union of Am. v. Curran, 87 F.Supp. 423, 425-26 (S.D.N.Y. 1949)(holding that the court had discretion to allow substitution of plaintiffs to satisfy diversity jurisdiction requirements in order to give the court jurisdiction where no jurisdiction existed when the complaint was filed); see also In re Vivendi Universal, S.A. Secs. Litig., 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009)(allowing reasonable time for Rule 17(a)(3) substitution of the original plaintiffs, who lacked standing, explaining that "a standing defect at the commencement of suit does not require dismissal of the action" and the court should allow reasonable time to substitute "the entities that had standing to bring plaintiff's claims at the commencement of the suit"); In re Adelphia Commc'ns Corp. Secs. and Derivative Litig., 2009 WL 1490599, at *5 (S.D.N.Y. May 21, 2009)(allowing substitution under Rule 17(a)(3) of plaintiff-investment

advisor, who lacked constitutional standing, with his clients, who had constitutional standing)).

Here, the substitution of PBS Ltd. as plaintiff would not alter the substance of the action. Additionally, allowing substitution "is the wiser answer to the problem of expediting trials and avoiding unnecessary delay and expense of requiring an action to be started anew where a substitution is desired though the subject matter of the actions remains identical." Natn'l Maritime Union, 87 F.Supp. at 426. The alternative to allowing substitution here would be dismissal without prejudice.[4] See Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc., 587 F.3d 1375, 1380 (Fed. Cir. 2009) ("Ordinarily, dismissal for lack of standing is without prejudice."(quoting Fieldturf, Inc. v. Southwest Recreational Indus., 357 F.3d 1266, 1269 (Fed. Cir. 2004))). PBS Ltd. could then file suit in its own name and the parties would soon be back in the same place.[5]

---

[4] The cases cited by CHF to argue that PBS Inc.'s complaint should be dismissed with prejudice are inapplicable. See Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 41 (2d Cir. 1997)(holding that a district court has discretion to dismiss claims with prejudice because of a plaintiff's various procedural violations); Burnette v. Lockheed Missiles & Space Co., Inc., 72 F.3d 766, 767 (9th Cir. 1995) (upholding district court's imposition of Rule 11 sanctions and dismissal with prejudice of plaintiff's "spurious" claim that was added without diligent research or regard to its merit).
[5] The '651 and '039 patents expire in November 2017. See 35 U.S.C. § 173 ("Patents for designs shall be granted for the term of fourteen years from the date of grant.").

**3.**

The final question is whether PBS Inc. should be allowed to substitute under Rule 17(a)(3).  Rule 17(a)(3) provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed.R.Civ.P. 17(a)(3).  "The meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir. 1973) (quoted with approval by the Second Circuit in Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 48 n. 7 (2d Cir. 2005)).  Here, there is no dispute that PBS Ltd., as owner and assignee of the '651 and '039 patents, is the real party in interest.

Substitution under Rule 17(a)(3) "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, 106

F.3d at 20.   Courts should grant leave to substitute if
"(1) the defect in the named plaintiffs plausibly resulted
from mistake ('mistake' prong), and (2) correcting this
defect would not unfairly prejudice defendants by changing
the particulars of the claims against them ('prejudice'
prong)."   Wiwa v. Royal Dutch Petroleum Co., 2009 WL
464946, at *10 (S.D.N.Y. Feb. 25, 2009)(citing Advanced
Magnetics, 106 F.3d at 20-21).

A mistake is plausible "absent evidence of bad faith
or intent to deceive."   Wiwa, 2009 WL 464946, at *10
(citing Advanced Magnetics, 106 F.3d at 20-21).   Further,
an attorney's ignorance, incompetence, or lack of diligence
is not evidence of bad faith.   Wiwa, 2009 WL 464946, at *11
(holding that although plaintiffs had shown "carelessness
and a lack of diligence", there was "no evidence that they
acted in bad faith," and thus, plaintiffs met the mistake
prong).

The prejudice analysis focuses on whether the
defendant had sufficient notice of the claims against it --
"[w]here defendants had notice in the original complaint of
the nature of the claims against them, [substitution] does
not unfairly prejudice them."   Wiwa, 2009 WL 464946, at *10
(citing Advanced Magnetics, 106 F.3d at 20-21.)

Here, PBS Inc. asserts that when filing this suit, its attorney was under the mistaken belief that PBS Inc. was the owner of the '651 and '039 patents based on the face of each patent, which listed PBS Inc., not PBS Ltd., as the assignee. (See Decl. of Richard A. De Palma, June 3, 2010 ("De Palma Decl.") ¶ 2.)  Park B. Smith, chairman of PBS Inc. and PBS Ltd., likewise avows that he mistakenly believed that PBS Inc. was the owner from the time that the complaint was filed until May 2010, when he was advised otherwise by his attorney.  (See June 2010 Smith Decl. ¶¶ 5-6.)  While PBS Inc.'s failure to look beyond the face of the patents and investigate the underlying assignment documents before filing suit evinces a lack of diligence, there is no indication that they acted in bad faith and absent such evidence, PBS Inc. meets the mistake prong. See Wiwa, 2009 WL 464946, at *11.

Additionally, except for naming PBS Ltd., instead of PBS Inc., as the plaintiff, the amended complaint will be identical to the original complaint.  Such a change is "merely formal and in no way alters the original complaint's factual allegations," Advanced Magnetics, 106 F.3d at 20, and therefore, CHF will not suffer any unfair prejudice because it has been on notice of the claims since the suit was filed in 2006.

16

Thus, PBS Ltd. is substituted for PBS Inc. as plaintiff pursuant to Rule 17(a)(3) and this action proceeds as if PBS Ltd. had originally commenced this litigation.[6]   Fed.R.Civ.P. 17(a)(3).   Accordingly, CHF's motion to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for lack of standing is denied as moot.

### B. CHF's Motion for Summary Judgment

CHF moves for summary judgment of noninfringement, or in the alternative, of invalidity of the '651 and '039 patents.   CHF argues that it is entitled to summary judgment under the ordinary observer test as set forth in Egyptian Goddess, or, in the alternative, that the '651 and '039 patents are invalid as anticipated by prior art. (See Def.'s Summ. J. Mem. at 1-2.)

### 1.

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[6] For consistency and to avoid confusion, this Court will continue to refer to PBS Inc. as the plaintiff for the remainder of this memorandum and order.

242, 247 (1986) (citing Fed. R. Civ. P. 56(c)).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

"Although patent issues are as amenable to summary resolution as other matters, when material facts are disputed, and testimonial, documentary, and expert evidence are needed for their resolution, summary adjudication is not indicated." Quad Envtl. Techs. Corp. v. Union Sanitary Dist., 946 F.2d 870, 872 (Fed. Cir. 1991).

**2.**

This Court will first consider CHF's argument that PBS Inc.'s '651 and '039 patents are invalid as anticipated. (See Def.'s Summ. J. Mem. at 15.)  To assess a patent's validity, a court must first interpret the patent's claims and then determine "whether the limitations of the claims as properly interpreted are met by the prior art." TI Group Auto. Sys. (North Am.), Inc. v. VDO North Am., L.L.C., 375 F.3d 1126, 1139 (Fed. Cir. 2004).  Anticipation is a question of fact, Medical Instrumentation and

Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220, and "[w]hether a reference was published prior to the critical date, and therefore is prior art, is a question of law based on underlying facts." Typeright Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1157 (Fed. Cir. 2004).

When looking at a defendant's "proffered evidence of invalidity, it must be kept in mind that issued patents enjoy a presumption of validity, and therefore the evidence to show invalidity must be clear and convincing." Medical Instrumentation, 344 F.3d at 1220 (citing Schumer v. Lab. Computer Sys., 308 F.3d 1304, 1315-16 (Fed. Cir. 2002)). "[S]ummary judgment is inappropriate if a trier of fact applying the clear and convincing standard could find for either party." Oney v. Ratliff, 182 F.3d 893, 895 (Fed. Cir. 1999)(citing Anderson, 477 U.S. at 255). Further, reliance on "oral testimony to establish the existence of allegedly anticipatory devices has long been viewed with skepticism." Sjolund v. Musland, 847 F.2d 1573, 1578-79 (Fed. Cir. 1988); see also Typeright Keyboard, 374 F.3d at 1157-58(reversing district court's grant of summary judgment of invalidity because trial was necessary to determine whether the testimony proffered by the defendant to prove that a document was prior art was credible); Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368,

1373, (Fed. Cir. 1998)(holding that even credited testimony by an interested party absent corroborating documents is not sufficient to support a finding that a patent was anticipated by prior knowledge or use of the claimed invention).

Here, as discussed above, the '651 patent describes "a raisable panel without specified ornamentation; a back also without specified ornamentation; folds that stack and cascade slightly upwards at the bottom of the shade when the shade is raised; and a continuous rod pocket or sleeve formed at the top of the shade for suspending the shade from a rod or pole." Park B. Smith, 2008 WL 650339, at *3. The '039 patent similarly describes "a raisable panel without specified ornamentation; a back also without specified ornamentation; and folds that stack and cascade slightly upwards at the bottom of the shade when the shade is raised." Id.

CHF argues that all of these features are disclosed in the Blue Toile Roman Shade (the "Blue Toile Shade"), which was offered for sale by Country Curtains, Inc. in 2000, prior to the critical dates of '651 and '039 patents.[7] (See

[7] The '651 patent application was filed on November 23, 2003 and thus, the '651 patent's critical date is November 23, 2002. See 35 U.S.C. § 102 (defining prior art as an invention that was in public use or on sale in the United States, more than one year before the date of the application for the claimed patent). The '039 patent application was

Def.'s Summ. J. Mem. at 15.)  To support this argument, CHF points to: (1) photographs of a Blue Toile Shade that it purchased from Country Curtains, Inc. in March 2006 (see Sadler Decl., 9/30/09, ¶¶ 4, 6); (2) a copy of the Country Curtains Autumn 2000 Catalog that lists for sale the Blue Toile Shade, but does not include an image of the product (Decl. of Nancy Ciaschini, Apr. 13, 2006 ¶ 8; Ex. 1); (3) testimony by Leo F. Kavanaugh, Vice President of Merchandising for Country Curtains Inc., that he is not aware of any changes to the Blue Toile Shade's design since it was introduced in the Autumn 2000 Catalog and that generally, it "would be extremely unusual" for such a change to occur (Kavanaugh Dep. at 37, 49); and (4) expert testimony that, based on a review of photographs and physical samples of the Blue Toile Shades that were purchased in 2006, the Blue Toile Shade discloses "each individual feature of PBS Inc.'s asserted point of novelty and overall appearance of the claimed design of the '651 patent." (Katzin Supp. Decl. ¶ 17; Katzin Decl. ¶ 68.)

This evidence, however, is insufficient to show that there is no issue as to any material fact, particularly in light of the clear and convincing standard required for

---

filed on March 9, 2004 and thus, the '039 patent's critical date is March 9, 2003.  See id..

invalidity.   CHF relies on the oral testimony of Leo
Kavanaugh, a Country Curtain employee, to establish that
the Blue Toile Shade, as sold in March 2006, is prior art.
Kavanaugh's testimony is hardly unequivocal on this point -
- he states that he is not aware of any changes and that in
general, it would be unusual for such changes to occur.
(See Kavanaugh Dep. at 37, 49.)   CHF offers no physical
evidence to corroborate Kavanaugh's testimony and as the
Federal Circuit has aptly noted, with the "ubiquitous paper
trail of virtually all commercial activity," it is rare
that some physical record of prior art, such as a drawing
or photograph, does not exist.   Woodland Trust, 148 F.3d at
1373.   Further, this Court "may not assess the credibility
of testimony when granting summary judgment."   Typeright
Keyboard, 374 F.3d 1151, 1159 (Fed. Cir. 2004)(quoting
Loral Fairchild Corp. v. Matsuishita Elec. Indus. Co., 266
F.3d 1358, 1363 (Fed. Cir. 2001)).

While CHF's proffered evidence may be sufficient to
support a jury finding that the Blue Toile Shade, as sold
in 2006, is prior art, a reasonable jury could conclude
otherwise.[8]   Thus, the evidence proffered by CHF is

---

[8] It is worth noting that if a jury does find Kavanaugh's testimony
credible, this Court will still have to consider whether the testimony
has been sufficiently corroborated.   See Finnigan Corp. v.
International Trade Com'n, 180 F.3d 1354, 1369 (Fed. Cir. 1999)
("[C]orroboration is required of any witness whose testimony alone is

insufficient to establish that there are no issues of material fact as to the invalidity of the '651 and '039 patents.

CHF's motion for summary judgment as to invalidity is therefore denied.

**3.**

CHF also argues that PBS Inc.'s design patent claim must be construed narrowly because the prior art is crowded and close to the claimed design and thus, there can be no patent infringement in light of the "revised" ordinary observer test as set forth in Egyptian Goddess. (See Def.'s Summ. J. Mem. at 1-2.)

In Egyptian Goddess, the Federal Circuit merely "refined the ordinary observer test by characterizing the ordinary observer as being 'deemed to view the differences between the patented design and the accused product in the context of the prior art.'" Intn'l Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1239-40 (Fed. Cir. 2009) (explaining that the ordinary observer is the sole test for anticipation, in light of Egyptian Goddess). In     other words, "[w]hen the differences between the claimed and accused designs are viewed in light of the prior art, the

_____

asserted to invalidate a patent, regardless of his or her level of interest.").

attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing Egyptian Goddess, 543 F.3d at 681). "[I]f the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." Egyptian Goddess, 543 F.3d at 678.

Here, CHF argues that the Blue Toile Shade shares all the features that PBS Inc. asserts are not shown in prior art and that the only distinguishing feature of the '651 and '039 patents' design is the absence of a weight bar and a skirt at the bottom of the shade. (See Def.'s Summ. J. Mem. at 15.) Therefore, CHF argues, the CHF Pole-Top Shade's design falls outside the narrow scope of the '651 patent because it has a large weight bar. For the reasons discussed above, however, there are issues of material fact as to whether the Blue Toile Shade that CHF purchased in 2006, is prior art.

CHF also points to other examples of alleged prior art. (See e.g., Def.'s Demonstratives, Apr. 6, 2009, Ex A.) Assuming that these examples are prior art, a review of these images reveals that an ordinary observer, familiar

with these designs, could still be deceived into believing that the accused product is the same as the patented design.   In fact, a hypothetical ordinary observer would likely attach more importance to at least one aspect of the claimed design when viewed in the context of CHF's prior art examples -- the folds that stack and cascade slightly upwards at the bottom of the '651 and '039 designs' shade when the shade is raised.   This feature is also in CHF's Pole-Top Roman Shade and is largely why an ordinary observer could be deceived into believing that the accused product is the same as the patented design.

Moreover, this Court was fully apprised of the alleged prior art that CHF now points to when it held that the "overall similarity of the CHF product and the '651 and '039 patent designs demonstrates that the existence of an issue of material fact that would preclude summary judgment of noninfringement on the basis of the substantial similarly (or ordinary observer) test." Park B. Smith, 2008 WL 650339, at *4.   Specifically, this Court rejected CHF's argument that the weight bar and the slats on the CHF Pole-Top Roman Shade "detract from the overall similarity in appearance of the '651 patent design and the CHF Pole-Top Roman Shade, from the perspective of an ordinary observer." Id.

CHF's motion for summary judgment as to noninfringement is therefore denied.

### C. PBS Inc.'s Motion for Leave to Amend

Finally, PBS Inc. moves to amend its complaint to add additional parties and additional claims. (See Pl.'s Proposed Am. Compl. ¶¶ 5, 7, 11, 21-37.)  PBS Inc. argues that its proposed amendment "achieves substantial justice" and will not unduly prejudice CHF. (See Pl.'s Mot. to Am. Mem. at 2.)

#### 1.

Rule 15 of the Federal Rules of Civil Procedure provides that a "court should freely give leave [to amend] when justice so requires."  Fed.R.Civ.P. 15(a)(2).  As the Second Circuit has explained, however, a district court "plainly has discretion ... to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant."  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); see also Goss v. Revlon, 548 F.2d 405, 407 (2d Cir. 1976) (holding that where the party, "in seeking to add myriad new claims, advances no reason for his extended and undue delay, other than ignorance of the law; such failure has been held an insufficient basis for leave to amend").  When

a "considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." Sanders v. Thrall Car Mfg. Co., 582 F.Supp. 945, 952 (S.D.N.Y. 1983), aff'd, 730 F.2d 910 (2d Cir. 1984); see also Cresswell, 922 F.2d at 72 ("The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay.").

While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)(quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983)(internal quotations omitted)). In determining what constitutes "prejudice," courts consider whether the proposed amended complaint would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block, 988 F.2d at 350 (citations omitted).

**2.**

Here, PBS Inc. moved to amend over four years after the initial complaint was filed, over one year after the case was remanded back to this Court by the Federal Circuit, and on the same day that the parties completed briefing on CHF's dispositive summary judgment motion. Although discovery has not yet closed, discovery is underway -- the parties have exchanged and responded to discovery requests and PBS Inc. has taken depositions of third-parties, including CHF's expert. (See Pl.'s Mem. in Supp. of Its Mot. to Am. ("Pl.'s Mot. to Am. Mem.") at 2; Def.'s Mem. in Opp. to Pl.'s Mot. for Leave to Am. ("Def.'s Mot. to Am. Opp'n Mem.") at 4.)

PBS Inc. moves to amend its complaint to: (1) add PBS Ltd. as a co-plaintiff; (2) add Walmart, a customer of CHF, as a defendant; (3) add a claim for patent infringement of '596 patent; and (4) add a claim for unfair competition based on CHF's and Walmart's sales of the Pole-Top Roman Shade. (See Pl.'s Proposed Am. Compl. ¶¶ 5, 7, 11, 21-37.)

PBS Inc.'s request to add PBS Ltd. as a co-plaintiff is denied as moot in light of this Court's grant of PBS Inc.'s motion to substitute PBS Ltd. as plaintiff. PBS Inc.'s remaining requests are considered in turn.

**i.**

PBS Inc. has offered no explanation for its delay in adding Walmart as a defendant. PBS Inc. asserts that it "only months ago learned" that Walmart sold CHF's Pole-Top Roman Shade. (See Pl.'s Mot. to Am. Mem. at 9.) Walmart, however, was identified as a customer in CHF's Interrogatory responses on August 27, 2009, seven months before PBS Inc. moved to amend its complaint. (See Pl.'s Mot. to Am. Mem. at 7; Def.'s Mot. to Am. Opp'n Mem. Ex. F at 16.) Moreover, it is unlikely that PBS Inc. was unaware that Walmart sold CHF's Pole-Top Roman Shade prior to receiving CHF's interrogatory responses. PBS Inc. knew that CHF sold the Pole-Top Roman Shade to retailers, like Walmart, at the time PBS Inc. filed suit (Pl.'s Compl. ¶ 5) and in fact, soon after it filed suit, Linda Smith Johnson, President of PBS Inc. and PBS Ltd., declared that she "is keenly aware of what products are in the market, and by whom they are sold." (June 2006 Smith Decl. ¶ 28.)

Adding a new party, particularly one the size of Walmart, would undoubtedly delay the resolution of this matter. Further, the involvement of another defendant would require CHF to expend additional resources to complete discovery and to prepare for trial.

PBS Inc.'s motion for leave to add Walmart as a defendant is therefore denied.

**ii**.

Next, PBS Inc. asserts two explanations for its four-year delay in adding a claim for infringement of the '596 Patent.

First, PBS Inc. argues that it did not learn of CHF's "full position" on which features of the Pole-Top Roman Shade were ornamental, as opposed to functional, until two months before filing its motion to amend. (See Pl.'s Mot. to Am. Mem. at 9.) CHF, however, set forth its position as early as August 2006 when it first moved for summary judgment. (See CHF's Rule 56.1 Counterstatement, Aug. 9, 2006, ¶ 6 (denying that the accused CHF design and claimed design are "virtually identical" and identifying the ornamental features of the CHF Pole-Top Roman Shade design that CHF alleged differ from the PBS Inc.'s claimed design).) In fact, in PBS Inc.'s September 2006 cross-motion for summary judgment, PBS Inc. suggested that it would amend its complaint to include a claim for infringement of the '596 patent if the Court agreed with CHF that certain features of the Pole-Top Roman Shade were ornamental. (See Pl.'s Reply Mem. in Supp. of Its Cross-Mot. for Summ. J. at 3, fn. 1.)

PBS Inc.'s second explanation for the delay is likewise unsatisfactory. PBS Inc. asserts that in Richardson v. Stanley Works, Inc., 597 F.3d 1288 (Fed. Cir. 2010), the Federal Circuit "clarified the law with respect to the scope of a design patent . . . and how function elements should be factored out when construing a claimed design." (See Pl.'s Mot. to Am. Mem. at 10.) In Richardson, the Federal Circuit, in upholding the district court's construction of a design patent, merely articulated the applicable law. See 597 F.3d at 1293-4. The Federal Circuit explained that it has "made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article," and "when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." Richardson, 597 F.3d at 1293-94 (citing L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed. Cir. 1993)). While a change in law may justify granting leave to amend, there has been no such change here and PBS Inc.'s ignorance of the law, is not an adequate explanation for its delay. See Goss, 548 F.2d at 407.

Thus, PBS Inc. has offered no valid explanation for its four-year delay in seeking to assert the '596 patent.

Adding a new patent infringement claim would delay the resolution of this matter.  Defending a new patent infringement claim would also require CHF to expend additional resources to complete discovery and prepare for trial.  Not only have the parties completed briefing on CHF's motion for summary judgment as to noninfringement, but PBS Inc. has already deposed CHF's expert.

PBS Inc.'s motion for leave to add a claim for infringement of the '596 patent is therefore denied.

### iii.

Finally, PBS Inc. has offered no reason for its four-year delay in seeking to add a claim for unfair competition, which alleges that CHF sought to take advantage of the commercial success of PBS Inc.'s product, the Magic Blind, and to cause consumer confusion as to the origin, connection, or association of CHF's Pole-Top Roman Shade.  (See Proposed Am. Compl. ¶¶28-37.)  There is no indication that PBS Inc. was not aware of the facts giving rise to its proposed unfair competition claim in 2006, when it filed the complaint.  In fact, PBS Inc. asserted allegations similar to those it now proposes to assert in a letter that it sent to CHF before PBS Inc. filed this suit. (See Def.'s Mot. to Am. Opp'n Mem. Ex. A ("Sale of the identified CHF Pole-Top Roman Shade by your company causes

serious injury to our client, confuses and misleads the consuming public as to the source and origin of your goods and suggests a connection with our client which you do not have.").)

Defending against an unfair competition claim would require CHF to expend additional resources in discovery and preparation for trial, and would delay the resolution of the matter. An unfair competition claim would introduce new issues about PBS Inc.'s Magic Blind and the public's perception of the product.

PBS Inc.'s motion for leave to add an unfair competition claim is therefore denied.

### CONCLUSION

For the above reasons, PBS Inc.'s motion to substitute is GRANTED; CHF's motion to dismiss is DENIED; CHF's motion for summary judgment is DENIED; and PBS Inc.'s motion for leave to file an amended complaint is DENIED.

SO ORDERED.

Dated: July 12, 2011

Lawrence M. McKenna
U.S.D.J.

33